Edward J. Blum, State Bar No. 185163
LAW OFFICE OF EDWARD J. BLUM
3700 Wilshire Blvd., Suite 950
Los Angeles, California 90010
Phone:  (213) 479-5322; Fax:  (323) 383-9910
Email:  edblum@duidefenseLA.com

Attorney for Jonathan Morris

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JONATHAN MORRIS, an individual,<br><br>                Plaintiff,<br><br>vs.<br><br>CHAD WOLF, Acting Secretary, United States Department of Homeland Security, a government entity,<br><br>                Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL** |

## **COMPLAINT**

COMES NOW Plaintiff, JONATHAN MORRIS, (hereinafter "Plaintiff"), by and through his undersigned counsel, hereby sues Defendant CHAD WOLF, Acting Secretary of the United States Department of Homeland Security (hereinafter referred to as "Defendant"), and states as follows:

## NATURE OF THE ACTION

Plaintiff brings this lawsuit to remedy acts of employment discrimination perpetrated against him by Defendant in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991, including discrimination based on race, sex, color, and reprisal.  Plaintiff's allegations are discussed in greater particularity in paragraphs 19 through 50 below.

## JURISDICTION

1.      This Honorable Court has jurisdiction over the subject matter of this employment discrimination action as Defendant is the head of a branch of the Federal Government, and as such, this court has jurisdiction under 28 U.S.C. § 1346.

2.      Jurisdiction over this matter is also properly invoked under 28 U.S.C. § 1331, which conveys federal question jurisdiction and specifically under 28 U.S.C. §§ 1343(3), 1343(4).

3.      This Honorable Court also has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1337.

4.      This action is also authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, which grants jurisdiction over civil actions which seek monetary damages, equitable, and declaratory relief for violations of civil rights.

## **VENUE**

5.     This action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391, in that the conduct complained of occurred within the Central District of California, and that the Defendant, as the Secretary for the DEPARTMENT OF HOMELAND SECURITY ("DHS"), is the designated official responsible for the conduct of the personnel for the TRANSPORTATION SECURITY ADMINISTRATION ("TSA") at Los Angeles International Airport ("LAX"), located in the City of Los Angeles, County of Los Angeles, State of California.

6.     Venue is also proper in the Central District of California under 42 U.S.C. § 2000e-5(f)(3); as (a) Plaintiff was employed by DHS and the TSA in the Central District of California at the time of his removal from federal service, (b) Plaintiff's employment records are maintained by the DHS & TSA in the Central District of California, (c) decisions adverse to Plaintiff's employment that are the subject of this civil action were made in the Central District of California, and (d) because a substantial part of the events or omissions giving rise to this lawsuit occurred in the Central District of California.

## **PARTIES**

7.     At all relevant times herein, Plaintiff was a natural person *sui juris* residing within the County of Los Angeles, State of California, and at all relevant times herein, Plaintiff was employed by the DHS and TSA in the City of Los Angeles, County of Los Angeles, State of California.

8.      At all relevant times herein, Plaintiff was a "person" covered by Title VII as defined in 42 U.S.C. § 2000e(a).  At all relevant times herein, Plaintiff was an "employee" covered by Title VII as defined in 42 U.S.C. § 2000e(f).

9.      The DHS was established by the Homeland Security Act of 2002, is the third largest Cabinet department of the United States federal government, and is charged with the responsibility of protecting the territory of the United States from terrorist attacks and responding to natural disasters.  One of the agencies commanded by Defendant is the TSA, which conducts business, maintains employees and operates as a safety and security-screening agency in this judicial district and throughout the country.  The Defendant is headquartered in Washington, D.C.

10.     Defendant is the head of the DHS and the sole Defendant in this case. See 42 U.S.C. § 2000e-16(a) and (c).  At all relevant times herein, DHS is and was an "executive agency" as provided in 5 U.S.C. § 105, and as incorporated in 42 U.S.C. § 2000e-16, is "an Executive Department, a Government corporation, or an independent establishment."

11.     The TSA, where Plaintiff worked, was transferred to the DHS pursuant to the Department of Homeland Security Act of 2002, section 424, effective March 1, 2003. Defendant therefore has the full responsibility for administration of all programs within the TSA, including the employment policies and practices of TSA in all regions and in a position to create and implement policy to eliminate and prevent any form of discrimination and retaliation and to provide complete relief for Plaintiff.  Defendant is sued in his official capacity.

12.     The TSA, as a component of DHS, is responsible for the security of all modes of transportation including aviation, rail, highways and pipelines. The vast majority of TSA's resources are dedicated to aviation, and as such, TSA oversees the passenger safety and security measures at approximately 450 of the nation's commercial airports, including airports within the Central District of California.  The headquarters of the TSA in Southern California, including LAX and other airports, is located in Los Angeles, California.

13.     All operational instructions and policies and procedures and discipline originate at the National Headquarters of the DHS and TSA, are transmitted to LAX, and from there, Boyd Keith Jeffries, the Federal Security Director at TSA/LAX, has the responsibility, along with his immediate subordinates, to implement instructions, policies, procedures and discipline.  At all relevant times herein, TSA/LAX management, under color of the DHS, operated and/or managed and or supervised and did maintain TSA employees, agents, and/or representatives from TSA/LAX, including, but not limited to, SPOT Transportation Security Manager Larry Hamara ("Hamara"), SPOT Transportation Security Manager Stephen Miller ("Miller"), Deputy Assistant Federal Security Director for Screening Christine Pope ("Pope"), Assistant Federal Security Director for Screening Brian Bondoc ("Bondoc"), as well as the Plaintiff.

14.     Defendant is and was conducting business within the State of California, having an office located in the County of Los Angeles, and was also Plaintiff's employer.

15.     Defendant is a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year in accordance with 42 U.S.C. § 2000e(b).

16.     The term "employer" under the Title VII liability scheme is defined to include any agent of the DHS and TSA as stated in 42 U.S.C. § 2000e(b).  Thus, all supervisory personnel and other agents of DHS and TSA described herein (e.g. Hamara, Miller, Pope, & Bondoc) are themselves employers for purposes of liability.

17.     At all relevant times herein, all supervisory personnel and other agents of TSA described herein (e.g. Hamara, Miller, Pope, & Bondoc) were the agents, servants, or employees of Defendant, and at all times were acting within the course and scope of said agency, service, or employment.

18.     At all relevant times herein, all supervisory personnel and other agents of TSA described herein (e.g. Hamara, Miller, Pope, & Bondoc) acted with the knowledge, consent, and/or ratification of Defendant.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

19.     At all relevant times herein, Plaintiff's race/national origin was African-American/black; his sex/gender was male; and his skin color was medium-brown.

20.     At all relevant times herein, Plaintiff was a Lead Behavior Detection Officer ("LBDO") employed by Defendant at LAX from on or about March 5, 2005 until he was suspended from federal service on or about May 28, 2014.[1]

21.     On or about February 26, 2014, Master Behavior Detection Officer Rhonda Williams ("Williams") was observed at the Terminal 6 checkpoint improperly performing Screening Passengers by Observation Techniques (SPOT) Procedures.

22.     On or about February 27, 2014, SPOT Transportation Security Manager Alrico Farmer ("Farmer") and SPOT Transportation Security Manager Tracy Wilson

---

[1] Plaintiff was promoted to LBDO in or about August 2008.

("Wilson") met with Williams and showed her Closed Circuit Television ("CCTV") footage of her positioning and they discussed what was improper.  Williams acknowledged her wrongdoing and promised that it would not be repeated in the future.  Farmer indicated that if the conduct was repeated in the future, Williams could result in disciplinary action. Williams was issued an AIM entry, which is non-disciplinary.

23.     On or about February 26, 2014, Expert Behavior Detection Officer Marion Higgins ("Higgins") was observed at the Terminal 6 checkpoint improperly performing SPOT Procedures.

24.     On or about February 27, 2014, Farmer and Wilson met with Higgins and showed her CCTV footage of her positioning and they discussed what was improper. Higgins acknowledged her wrongdoing and promised that it would not be repeated in the future.  Farmer indicated that if the conduct was repeated in the future, Higgins could result in disciplinary action.  Higgins was issued an AIM entry, which is non-disciplinary.

25.     Neither Williams nor Higgins were disciplined for their improper performance of SPOT Procedures.

26.     On or about April 2, 2014, between 1720 to 1806, Plaintiff and his partner, Behavior Detection Officer (BDO) Ja'me London ("London"), were on duty and positioned at the Terminal 4 Alpha Checkpoint at LAX.

27.     On April 2, 2014, Behavior Detection Officer Leang Lo ("Lo") and Behavior Detection Officer Omar Nassar ("Nassar") also worked on the Terminal 4 Alpha Checkpoint at LAX with Plaintiff and London between 1720 and 1806.  Lo is an Asian

male who is lighter in skin color than Plaintiff.  Nassar is a Caucasian/white male who is lighter in skin color than Plaintiff.

28.     On April 2, 2014, Hamara received a phone call from Assistant Federal Security Director for Screening Dan Wyllie regarding the conduct of a BDO team at the Terminal 4 Alpha checkpoint.  Miller and Hamara reviewed the CCTV Footage.  Hamara and Miller were both direct subordinates of Pope.  Although there were four (4) Behavior Detection Officers on the Terminal 4 Alpha Checkpoint on April 2, 2014 (e.g. Plaintiff, London, Lo, and Nassar), Miller and Hamara only observed Plaintiff and London allegedly engaging in misconduct.  As of result of their observations, Miller and Hamara authored an inaccurate Memorandum/Memorandum to File that only alleged that Plaintiff and London had engaged in wrongdoing and provided it to Pope.

29.     On or about April 5, 2014, Master Behavior Detection Officer Christina Cosey ("Cosey") made a report to Hamara via email that she had been subjected to a hostile work environment by SPOT Transportation Security Manager Roger Michel ("Michel") for over one (1) year.  Pope, Wilson, and Michel were copied on the email. Specifically, in her complaint, Cosey alleged fifteen (15) instances of what she believed was Michel subjecting her to disparate/hostile treatment.  Cosey also identified Plaintiff as a witness to her allegations of a hostile work environment.

30.     On or about April 7, 2014, Deputy Assistant Federal Security Director for Screening Janis Nagy ("Nagy") was appointed to investigate Cosey's allegations of a hostile work environment.  Between April 7, 2014 and April 29, 2014, Nagy interviewed Cosey, Plaintiff, and other witnesses regarding Cosey's allegations.  In fact, when Plaintiff was interviewed by Nagy, he informed Nagy, inter alia, that "[e]very day when I

come to work I feel like I could be fired.  I've seen STSM Michel stand close to Cosey in briefing and when she moves away, he follows."

31.     At the conclusion of the investigation of the Cosey complaint, Nagy provided an investigative report to Pope.  In said report, Nagy made it clear to Pope that Plaintiff participated in the investigation of Cosey's hostile work environment complaint.

32.     Pope has acknowledged Plaintiff's participation in the investigation of the Cosey's hostile work environment complaint in or about April 2014.

33.     On or about May 1, 2014, at approximately 1230, Pope discussed several of Cosey's allegations with Michel.  Michel stated that he meant no disrespect in speaking with Cosey when he told her to "smile", and he also acknowledged the inappropriateness of the statement he made that women were easier to work with than men.

34.     On or about May 5, 2014, Pope issued Michel a Letter of Guidance and Direction as a non-disciplinary step to address his conduct regarding treating officers with dignity and respect, and in a fair and equitable manner, as well as serving as a positive role model for his peers and subordinates.

35.     Pope reviewed the same CCTV footage that Miller and Hamara viewed and concluded that only Plaintiff and London failed to follow proper SPOT procedures. Pope did not conclude that Lo and Nassar failed to follow proper SPOT procedures. Pope did not propose any discipline against Lo or Nassar for their failure to follow proper SPOT Procedures on April 2, 2014 despite the fact that she would be the person who would have proposed discipline against the two of them.

36.     On or about April 29, 2014, Pope proposed that Plaintiff be suspended for seven (7) calendar days for his alleged conduct on April 2, 2014.  Pope had knowledge of Plaintiff's participation in Cosey's hostile work environment complaint.

37.     Assistant Federal Security Director for Screening Brian Bondoc ("Bondoc") reviewed the CCTV footage and ignored the SPOT violations of Lo and Nassar.

38.     On or about May 28, 2014, Bondoc sustained Pope's proposal and issued Plaintiff a Notice of Decision on Proposed Seven (7) Calendar Day Suspension. Plaintiff served his seven (7) calendar day suspension from June 2, 2014 until June 8, 2014.  Bondoc had knowledge of Plaintiff's participation in Cosey's hostile work environment complaint.

39.     London, Williams, and Higgins are African-American females.  Lo is an Asian male.  Nassar is Caucasian/white male.

40.     Higgins, Williams, Lo, and Nassar are all different colors than Plaintiff. Specifically, Williams, Lang Lo, and Nassar are each lighter than Plaintiff and despite doing the same things that Plaintiff was accused of, they received no discipline for same or similar behavior.  Higgins is darker than Plaintiff and despite doing the same thing that Plaintiff was accused of, she received no discipline.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

41.     As indicated in paragraphs 42 through 50 below, Plaintiff has met all procedural requirements for filing this Complaint.

42.     Plaintiff first requested EEO counseling in this matter on or about July 10, 2014, which was within 45 days of <u>discovering</u> the employment discrimination as alleged on or about May 28, 2014.

43.     On or about August 11, 2014, Defendant informed Plaintiff of the conclusion of the EEO counseling process and provided Plaintiff a Notice of Right to File a Formal Complaint of Discrimination.

44.     Plaintiff received the Notice of Right to File a Formal Complaint of Discrimination on or about September 10, 2014.

45.     Plaintiff submitted a formal charge of Discrimination to Defendant on or about September 23, 2014, which was within fifteen (15) days of receipt of the Notice of Right to File a Formal Complaint of Discrimination on September 10, 2014.  Defendant acknowledged receipt of the formal complaint on or about September 24, 2014.

46.     On or about January 9, 2015, Defendant accepted the following claim for investigation:

> "You, and Expert Behavioral Detection Officer, at Los Angeles International Airport, in Los Angeles, California, allege that you were discriminated against based on, race (African American), color (medium brown), sex (male), and reprisal prior EEO activity (HS-TSA-01927-2011), when on or about May 28, 2014, an Assistant Federal Security Director-Screening suspended you from federal service for seven calendar days."

47.     Defendant investigated Plaintiff's claim between on or about February 2015 to April 2015.  At the conclusion of the investigation, Defendant provided Plaintiff with a copy of the Report of Investigation ("ROI") and notice of his right to request a hearing before an EEOC Administrative Judge ("AJ") or, alternatively, to request a Final Agency Decision.

48.     Plaintiff requested a hearing before an AJ and on or about June 17, 2015.

49.     On or about September 24, 2019, Kathleen Mulligan, an AJ from the EEOC's Los Angeles District Office, issued a decision on the EEO complaint without a hearing, pursuant to 29 C.F.R. § 1614.109(g).

50.     On or about October 31, 2019, pursuant to 29 C.F.R § 1614.110, Defendant took final action on Plaintiff's complaint by issuing a final agency decision. Defendant served his final agency decision by email on November 4, 2019.  Plaintiff received Defendant's final agency decision on or about November 9, 2019.  Therefore, Plaintiff has brought this action within the time limits established in 42 U.S.C. § 2000e-16(c).  Accordingly, Plaintiff has exhausted his administrative remedies.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Unlawful Race Discrimination/Disparate Treatment in Violation of 42 U.S.C. §§ 2000e-2(a)(1) & 42 U.S.C. § 2000e-2(m))**

51.     Paragraphs 1 through 50 above are hereby incorporated by reference as though fully set forth in this claim.

52.     At all relevant times herein, Plaintiff's race was African-American/black; a class protected by law.  Defendant treated Plaintiff differently than similarly situated individuals outside the Plaintiff's protected class because of his membership in the aforementioned protected class.  In other words, Defendant did not propose suspension nor suspend other, non-African-American/black employees who engaged in conduct similar to his own—such as Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties.

53.     Title VII of the Civil Rights of 1964, as amended, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).  Title VII of the Civil Rights of 1964, as amended, also adds that ". . . an unlawful employment practice is established when the complaining party

demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

54.     Defendant through its officers, agents, and/or employees acting within the scope of their employment, discriminated against Plaintiff on the basis of his race (i.e. African-American/black) in violation of 42 U.S.C.A. § 2000e-2(a)(1) by engaging in a course of conduct which included, but is not limited to, at least some of the acts set forth above.

55.     At all relevant times herein, Plaintiff was undeniably qualified for the TSO position because he was hired by Defendant on or about March 5, 2005.  Plaintiff satisfactorily performed the duties of a TSO without limitation or restriction from on or about March 5, 2005 until on or about May 28, 2014, and he was fully capable of performing the essential duties of a TSO from on or about March 5, 2005 until on or about May 28, 2014.  Additionally, since Plaintiff began his employment with Defendant on or about March 5, 2005, he has continually met Defendant's legitimate performance expectations each fiscal year because he always received at least an "Achieved Standards" rating on all of his performance evaluations.

56.     Plaintiff suffered an adverse employment action – his suspension from federal service effective on or about May 28, 2014.

57.     Similarly situated employees (e.g., Lo & Nassar) to Plaintiff and not within Plaintiff's protected class were treated more favorably than Plaintiff by Defendant. Specifically, as referenced herein, similarly situated non-African-American/black employees who engaged in Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties (e.g.,

Lo & Nassar), were not similarly disciplined and/or suspended from federal service like Plaintiff.

58.     Lo and Nassar are similarly situated to Plaintiff in all material respects because they are all engaged in similar misconduct and they all were subject to the same TSA policies regardless of position, including but not limited to, TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct), and the supporting Handbook to TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct), and TSA Screening Passengers By Observation Techniques (SPOT) Standard Operating Procedures.

59.     There was no legitimate, non-discriminatory reason for the differing treatment between Plaintiff and the similarly situated employees referenced herein.  In fact, Defendant's sustainment of the charges of Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties and reasons in support thereof for Plaintiff's suspension from federal service are pretextual.

60.     Defendant's discrimination against Plaintiff on the basis of his race (i.e., African-American/black) in violation of 42 U.S.C.A. § 2000e-2(a)(1) was a substantial and motivating reason for unlawful treatment of his as alleged in this complaint including his suspension.

61.     The conduct of Defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), (42 U.S.C. § 2000e et seq.) which constitutes fundamental public policy declaring it to be illegal to discriminate against an

employee based upon the employee's race.  Defendant's conduct was discriminatory in its disparate treatment of Plaintiff.

62.     As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e-2(a)(1), Plaintiff has suffered general and special damages, including lost wages, lost benefits, lost seniority, lost future earnings, lost employment opportunities, emotional distress, anxiety, humiliation, embarrassment, and loss of self-esteem in an amount to be determined at trial.  Plaintiff has suffered and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless the Court grants relief.  Therefore, Plaintiff seeks all legal and equitable remedies available at law.

63.     As a further direct and proximate result of Defendant's violation of 42 U.S.C.A. §2000e-2, Plaintiff has been compelled to retain the services of the Law Offices of Edward J. Blum and will continue to incur legal fees and costs.  Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C.A. § 2000e-5(k) and 29 U.S.C. § 2000e-16(d) where in any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee (including expert fees) as part of the costs, and the United States shall be liable for costs the same as a private person.

## SECOND CAUSE OF ACTION
**(Unlawful Color Discrimination/Disparate Treatment in Violation of 42 U.S.C. §§ 2000e-2(a)(1) & 42 U.S.C. § 2000e-2(m))**

64.     Paragraphs 1 through 50 above are hereby incorporated by reference as though fully set forth in this claim.

65.     At all relevant times herein, Plaintiff was medium brown in skin color; a class protected by law.  Defendant treated Plaintiff differently than similarly situated individuals outside Plaintiff's protected class because of his membership in the aforementioned protected class.  In other words, Defendant did not propose suspension nor suspend other, non-medium brown employees who were darker and/or lighter skinned than Plaintiff who engaged in conduct similar to his own— such as Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties.

66.     Title VII of the Civil Rights of 1964, as amended, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's color . . . ." 42 U.S.C. § 2000e-2(a)(1).  Title VII of the Civil Rights of 1964, as amended, also adds that ". . . an unlawful employment practice is established when the complaining party demonstrates that color . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

67.     Defendant through its officers, agents, and/or employees acting within the scope of their employment, discriminated against Plaintiff on the basis of his color (medium brown) and/or his skin color which was lighter and/or darker than comparable

employees in violation of 42 U.S.C.A. § 2000e-2(a)(1) by engaging in a course of conduct which included, but is not limited to, at least some of the acts set forth above.

68.     At all relevant times herein, Plaintiff was undeniably qualified for the TSO position because he was hired by Defendant on or about March 5, 2005.  Plaintiff satisfactorily performed the duties of a TSO without limitation or restriction from on or about March 5, 2005 until on or about May 28, 2014, and he was fully capable of performing the essential duties of a TSO from on or about March 5, 2005 until on or about May 28, 2014.  Additionally, since Plaintiff began his employment with Defendant on or about March 5, 2005, he has continually met Defendant's legitimate performance expectations each fiscal year because he always received at least an "Achieved Standards" rating on all of his performance evaluations.

69.     Plaintiff suffered an adverse employment action – his suspension from federal service effective on or about May 28, 2014.

70.     Similarly situated employees (e.g., Williams, Higgins, Lo, and Nassar) to Plaintiff and not within Plaintiff's protected class (e.g. medium brown in skin color) were treated more favorably than Plaintiff by Defendant.  Specifically, as referenced herein, similarly situated employees who engaged in Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties (e.g., Williams, Higgins, Lo, and Nassar) and who were either darker and/or lighter skinned than Plaintiff, were not similarly suspended from federal service like Plaintiff.

71.     Williams, Higgins, Lo, and Nassar are similarly situated to Plaintiff in all material respects because they are all engaged in similar misconduct and they all were

subject to the same TSA policies regardless of position, including but not limited to, TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct), and the supporting Handbook to TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct), and TSA Screening Passengers By Observation Techniques (SPOT) Standard Operating Procedures.

72.     There was no legitimate, non-discriminatory reason for the differing treatment between Plaintiff and the similarly situated employees referenced herein.  In fact, the charges of Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties and reasons in support thereof for Plaintiff's suspension from federal service are pretextual.

73.     Defendant's discrimination against Plaintiff on the basis of his color (e.g. black) in violation of 42 U.S.C.A. § 2000e-2(a)(1) was a substantial and motivating reason for unlawful treatment of him as alleged in this complaint including him termination.

74.     The conduct of Defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), (42 U.S.C. § 2000e et seq.) which constitutes fundamental public policy declaring it to be illegal to discriminate against an employee based upon the employee's color.  Defendant's conduct was discriminatory in its disparate treatment of Plaintiff.

75.     As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e-2(a)(1), Plaintiff has suffered general and special damages, including lost wages, lost benefits, lost seniority, lost future earnings, lost employment opportunities, emotional distress, anxiety, humiliation, embarrassment, and loss of self-esteem in an

amount to be determined at trial.  Plaintiff has now suffered and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless the Court grants relief.  Therefore, Plaintiff seeks all legal and equitable remedies available at law.

76.     As a further direct and proximate result of Defendant's violation of 42 U.S.C.A. §2000e-2, Plaintiff has been compelled to retain the services of the Law Offices of Edward J. Blum and will continue to incur legal fees and costs.  Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C.A. § 2000e-5(k) and 29 U.S.C. § 2000e-16(d) where in any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee (including expert fees) as part of the costs, and the United States shall be liable for costs the same as a private person.

## THIRD CAUSE OF ACTION
### (Unlawful Sex Discrimination/Disparate Treatment in Violation of 42 U.S.C. §§ 2000e-2(a)(1) & 42 U.S.C. § 2000e-2(m))

77.     Paragraphs 1 through 50 above are hereby incorporated by reference as though fully set forth in this claim.

78.     At all relevant times herein, Plaintiff's sex/gender was male; a class protected by law.  Defendant treated Plaintiff differently than similarly situated individuals outside Plaintiff's protected class because of his membership in the aforementioned protected class.  In other words, Defendant did not propose suspension nor suspend other, female employees who engaged in conduct similar to his own own— such as Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties.

79.     Title VII of the Civil Rights of 1964, as amended, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex . . . ." 42 U.S.C. § 2000e-2(a)(1).  Title VII of the Civil Rights of 1964, as amended, also adds that ". . . an unlawful employment practice is established when the complaining party demonstrates that sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

80.     Defendant through its officers, agents, and/or employees acting within the scope of their employment, discriminated against Plaintiff on the basis of his sex (male) in violation of 42 U.S.C.A. § 2000e-2(a)(1) by engaging in a course of conduct which included, but is not limited to, at least some of the acts set forth above.

81.     At all relevant times herein, Plaintiff was undeniably qualified for the TSO position because he was hired by Defendant on or about March 5, 2005.  Plaintiff satisfactorily performed the duties of a TSO without limitation or restriction from on or about March 5, 2005 until on or about May 28, 2014, and he was fully capable of performing the essential duties of a TSO from on or about March 5, 2005 until on or about May 28, 2014.  Additionally, since Plaintiff began his employment with Defendant on or about March 5, 2005, he has continually met Defendant's legitimate performance expectations each fiscal year because he always received at least an "Achieved Standards" rating on all of his performance evaluations.

82.     Plaintiff suffered an adverse employment action – his suspension from federal service effective on or about May 28, 2014.

83.     Similarly situated employees (e.g., Williams & Higgins) to Plaintiff and not within Plaintiff's protected class (e.g. male) were treated more favorably than Plaintiff by Defendant.  Specifically, as referenced herein, similarly situated female employees who engaged in Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties (e.g., Williams & Higgins) were not similarly suspended from federal service like Plaintiff.

84.     Williams and Higgins are similarly situated to Plaintiff in all material respects because they are all engaged in similar misconduct and they all were subject to the same TSA policies regardless of position, including but not limited to, TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct), and the supporting Handbook to TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Code of Conduct), and TSA Screening Passengers By Observation Techniques (SPOT) Standard Operating Procedures.

85.     There was no legitimate, non-discriminatory reason for the differing treatment between Plaintiff and the similarly situated employees referenced herein.  In fact, the charges of "Failure to Follow Proper Screening Passengers by Observation Techniques (SPOT) Procedures and negligent performance of duties" and reasons in support thereof for Plaintiff's suspension from federal service are pretextual.

86.     Defendant's discrimination against Plaintiff on the basis of his sex (e.g. male) in violation of 42 U.S.C.A. § 2000e-2(a)(1) was a substantial and motivating reason for unlawful treatment of him as alleged in this complaint including his suspension.

87.     The conduct of Defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), (42 U.S.C. § 2000e et seq.) which constitutes fundamental public policy declaring it to be illegal to discriminate against an employee based upon the employee's sex.  Defendant's conduct was discriminatory in its disparate treatment of Plaintiff.

88.     As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e-2(a)(1), Plaintiff has suffered general and special damages, including lost wages, lost benefits, lost seniority, lost future earnings, lost employment opportunities, emotional distress, anxiety, humiliation, embarrassment, and loss of self-esteem in an amount to be determined at trial.  Plaintiff has suffered and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless the Court grants relief.  Therefore, Plaintiff seeks all legal and equitable remedies available at law.

89.     As a further direct and proximate result of Defendant's violation of 42 U.S.C.A. §2000e-2, Plaintiff has been compelled to retain the services of the Law Offices of Edward J. Blum and will continue to incur legal fees and costs.  Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C.A. § 2000e-5(k) and 29 U.S.C. § 2000e-16(d) where in any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee (including expert fees) as part of the costs, and the United States shall be liable for costs the same as a private person.

## FOURTH CAUSE OF ACTION
### (Retaliation Discrimination in Violation of Title VII
### (42 U.S.C. § 2000e-3(a))

90.     Paragraphs 1 through 50 above are hereby incorporated by reference as though fully set forth in this claim.

91.     The acts, policies and practices of Defendant, as alleged herein above, violate Title VII's retaliation discrimination provisions.

92.     Title VII prohibit employers from discriminating against any of their employees because such employees have opposed any practice made an unlawful employment practice by Title VII, or because an employee has made a charge or participated in any manner in an investigation, proceeding or hearing under Title VII. See 42 U.S.C. § 2000e-3(a).

93.     Defendant willfully and intentionally discriminated against Plaintiff, as alleged hereinabove, on the basis of reprisal for his participation and/or opposition as a witness to a hostile work environment complaint.

94.     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-3(a), it is an unlawful employment practice for an employer to retaliate against an employee who opposes unlawful discriminatory conduct; or asserts civil rights protected by this statute.

95.     Plaintiff was at all times herein an employee covered by 42 U.S.C. 2000e, et seq., prohibiting discrimination in employment on the basis of race, color, and sex. Defendant was at all times herein an employer subject to 42 U.S.C. 2000e, et seq.

96.     Plaintiff engaged in protected activity in April 2014 when he participated in Cosey's hostile work environment complaint.  Pope had knowledge of Plaintiff's

participation in Cosey's hostile work environment complaint between on or about April 7, 2014 and May 1, 2014.

97.     Defendant retaliatory conduct was done intentionally to discourage Plaintiff and others like his from engaging in EEO activity and/or would dissuade reasonable employees from engaging in protected activity.

98.     Plaintiff suffered an adverse employment action – his suspension from federal service effective on or about May 28, 2014.

99.     As a proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses and has suffered and continues to suffer embarrassment, emotional distress, humiliation and mental anguish, all to his damage in an amount according to proof.

100.    Defendant's actions were pretextual because there was short period of time between the protected conduct between April 7, 2014 & May 1, 2014 (e.g. participation in the Cosey's hostile work environment complaint) and the adverse action on or about May 28, 2014.

101.    The effect of the retaliation complained of herein has been to deprive Plaintiff of equal employment opportunities.

102.    The unlawful employment practices were intentional, done with malice or with reckless indifference to Plaintiff's federally protected rights.

103.    By reason of Defendant's discrimination and retaliation, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. §2000e et. seq.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.      This court declare the actions complained of herein to be in violation of Title VII of the Civil Rights Act, as amended;

2.      An order rescinding and/or expunging the Notice of Decision on Proposed Seven (7) Calendar Day Suspension issued to Plaintiff on or about May 28, 2014;

3.      For special or economic damages comprised of past loss earnings (e.g. backpay) in an amount to be proven at the time of trial;

4.      For general or non-economic damages in the form of emotional distress, pain and suffering, humiliation, worry, and stress in an amount to be proven at the time of trial but which in any case shall not exceed $300,000;

5.      Defendant be ordered to take appropriate affirmative acts to insure that the actions complained of herein are not engaged in again by Defendant or any of his agents;

6.      Defendant, including the officers, director, agents, employees and successors, be permanently enjoined from discriminating or retaliating against any person;

7.      Actual damages be awarded to Plaintiff and against Defendant;

8.      Compensatory damages be awarded to Plaintiff and against Defendant;

9.      Plaintiff be awarded his attorneys' fees pursuant to 42 U.S.C. §1988; 29 U.S.C.A. §§ 2000e-16(d); 2000e-5(k).

10.      Plaintiff be awarded his costs; and

11.     Plaintiff be awarded all other relief that this Court deems just and proper under the circumstances.

Dated:  February 5, 2020          _____/s/_____
                                                    EDWARD J. BLUM


## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

Dated:  February 5, 2020          _____/s/_____
                                                    EDWARD J. BLUM